**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. 21-10364 21-10365 |
| *Plaintiff-Appellee,* | |
| v. | D.C. Nos. 2:20-cr-00039- KJM-1 |
| TOMMY LEE WALKER, | 2:20-cr-00206- KJM-1 |
| *Defendant-Appellant.* | |
| | OPINION |

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, Chief District Judge, Presiding

Argued and Submitted November 14, 2022
San Francisco, California

Filed May 30, 2023

Before: Sidney R. Thomas and Mark J. Bennett, Circuit
Judges, and Barry Ted Moskowitz,[*] District Judge.

Opinion by Judge Bennett

---

[*] The Honorable Barry Ted Moskowitz, United States District Judge for
the Southern District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed Tommy Walker's conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and the revocation of his supervised release in a prior case.

Walker was not tried until 557 days after his indictment largely because of the COVID-19 pandemic. Over Walker's objection, the district court excluded much of this time from the Speedy Trial Act calculation using the "ends of justice" provision of the Act, 18 U.S.C. § 3161(h)(7)(A), and, as a result, denied Walker's Sixth Amendment and Speedy Trial Act motions to dismiss his indictment.

The panel held that the district court properly excluded time under the ends of justice provision. The panel held that the non-exhaustive factors set forth in *United States v. Olsen*, 21 F.4th 1036 (9th Cir. 2022), support the district court's exclusion of time, and that the district court did not err—much less clearly err—in its ends of justice determination. The panel wrote that the district court acted commendably in doing its best to balance speedy trial rights and public safety in the face of what is hopefully a once-in-a-lifetime pandemic. Weighing the factors set forth in *United States v. Torres*, 995 F.3d 695 (9th Cir. 2021), and *Barker v. Wingo*, 407 U.S. 514 (1972), the panel held that Walker's Sixth Amendment claim based on his pretrial detention also fails.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court did not err by refusing to give Walker's requested mens rea instruction—that to convict, the jury had to find that he *knew* the handgun he possessed had traveled in or affected interstate commerce. The panel wrote that this court rejected this precise argument in *United States v. Stone*, 706 F.3d 1145 (9th Cir. 2013). The panel rejected Walker's argument that *Stone* is distinguishable because of the facts of this case. The panel also rejected Walker's arguments that *Rehaif v. United States*, 139 S. Ct. 2191 (holding that the government must prove both that the defendant knew he had the firearm and that he knew he belonged to a category of persons barred from possessing a firearm), effectively overruled, and is clearly irreconcilable with, *Stone*. The panel wrote that *Rehaif* explicitly disclaims imposing any mens rea requirement on § 922(g)'s federal jurisdictional requirement, and that the concern animating *Rehaif*—whether Congress intended to impose felony criminal penalties upon those who do not know that they belong to a category of persons barred from possessing a firearm—does not apply here.

Because the panel rejected Walker's challenges to his conviction, and his challenge to the revocation of his supervised release was based only upon the supposed infirm conviction, the panel necessarily rejected his challenge to the revocation of supervised release.

## COUNSEL

Ann C. McClintock (argued), Assistant Federal Public Defender; Heather E. Williams, Federal Public Defender; Federal Public Defenders' Office; Sacramento, California; for Defendant-Appellant.

Aaron D. Pennekamp (argued), Assistant United States Attorney; Camil A. Skipper, Assistant United States Attorney, Appellate Chief; Phillip A. Talbert, United States Attorney, Eastern District of California; Office of the United States Attorney; Sacramento, California; for Plaintiff-Appellee.

## OPINION

BENNETT, Circuit Judge:

On February 20, 2020, Tommy Walker was indicted for possessing a Jimenez Arms .380 semiautomatic handgun in violation of 18 U.S.C. § 922(g), the felon in possession of a firearm statute. He was not tried until August 30, 2021—557 days after his indictment—largely because of the COVID-19 pandemic. Over Walker's objection, the district court excluded much of this time from Walker's Speedy Trial Act calculation using the "ends of justice" provision of the Act, 18 U.S.C. § 3161(h)(7)(A), and, as a result, denied Walker's Sixth Amendment and Speedy Trial Act motions to dismiss his indictment.

At trial, the district court rejected Walker's request for a jury instruction requiring the jury to find that he knew that the handgun he possessed had traveled in interstate

commerce. Jurors were instead instructed that they needed to find beyond a reasonable doubt that: (1) Walker knowingly possessed the Jimenez Arms handgun; (2) this particular Jimenez Arms handgun had previously traveled in interstate or foreign commerce; (3) Walker had at least one prior conviction for an offense punishable by more than one year in prison; and (4) Walker knew that he had at least one such felony conviction.

Walker timely appeals both the speedy-trial and jury-instruction issues. The district court properly excluded time under the ends of justice provision of the Speedy Trial Act, which gives effect to the Sixth Amendment right to a speedy and public trial. In *United States v. Olsen*, 21 F.4th 1036, 1046 (9th Cir. 2022), we outlined non-exhaustive factors that are relevant in deciding whether continuances caused by the COVID-19 pandemic should be granted under the Speedy Trial Act's ends of justice provision. The *Olsen* factors support the district court's exclusion of time. Walker's Sixth Amendment claim also fails.

The district court also properly denied Walker's requested jury instruction. In *United States v. Stone*, we held that the interstate commerce element of 18 U.S.C. § 922(g) was "purely jurisdictional" and does not contain a mens rea requirement. 706 F.3d 1145, 1146–47 (9th Cir. 2013). The Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), does not overrule *Stone*, and *Stone* is not "clearly irreconcilable" with *Rehaif. See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Accordingly, we affirm Walker's conviction.[1]

---

[1] Walker also appeals from the district court's revocation of his supervised release in a prior case. But his challenge is based only upon

## I.

On November 22, 2019, Daisy Gutierrez recognized her neighbor Tommy Walker standing in the street with a gun in his hand, arguing with his partner or girlfriend. Walker was holding a bottle of alcohol, screaming profanities, and threatening to kill someone. Gutierrez called 911. Sacramento Police Department officers arrived at Walker's residence, and when Walker answered the door, they searched his home for the gun.

The officers found a loaded Jimenez Arms .380 caliber handgun in a dresser drawer next to papers with Walker's name on them. Because Walker was on probation for prior felony convictions—including a 2018 felon in possession of a firearm conviction—the police arrested him for being a felon in possession of a firearm.

Walker was charged with a single count of being a felon in possession of a firearm in violation of § 922(g)(1). He was arrested on February 10, 2020, and made an initial appearance that same day. Walker was detained and remained detained until his trial some eighteen months later. On February 20, 2020, the grand jury returned an indictment charging Walker with the § 922(g)(1) violation. At the February 24, 2020 arraignment, Walker did not object to Speedy Trial Act exclusions of time until April 20, 2020— and then later, June 15, 2020—to give defense counsel reasonable time to prepare, pursuant to 18 U.S.C. § 3161(h)(7)(B)(iv).

---

the supposed infirm conviction at issue here, which was one basis for the revocation. Because we reject Walker's challenges to his conviction, we necessarily reject his challenge to the revocation of supervised release.

COVID-19 then hit. On March 12, 2020, Chief Judge Mueller entered the first of many Eastern District General Orders concerning the pandemic. By March 18, 2020, all federal courthouses in the Eastern District were closed.

On April 17, 2020, Chief Judge Mueller entered General Order No. 617, which stated that all Eastern District courthouses would remain closed, and that in criminal cases, judges could continue matters:

> to a date after June 1, 2020, excluding time under the Speedy Trial Act with reference to . . . the Ninth Circuit Judicial Council's Order of April 16, 2020 continuing this court's judicial emergency for an additional one-year period and suspending the time limits of 18 U.S.C. § 3161(c) until May 2, 2021, with additional findings to support the exclusion in the Judge's discretion; if any criminal matters are maintained on calendar, to the full extent possible they shall be conducted by telephone or videoconference . . . .

On May 13, 2020, Chief Judge Mueller entered General Order No. 618, which superseded prior orders and declared that all courthouses in the Eastern District would be closed until further notice. General Order No. 618 also stated that district judges could continue criminal cases because of the pandemic and could exclude time under the Speedy Trial Act with appropriate findings to support such exclusions.

Walker's first hearing following his arraignment was held on June 15, 2020. He demanded a speedy trial. The United States orally moved to exclude certain time under the Speedy Trial Act. The court denied the motion without

prejudice and required the government to file a written motion. The United States filed such a motion on June 17, 2020, which the court granted at the July 7, 2020 hearing. The court first excluded the time from the filing of the motion (June 17) to the hearing (July 7) under 18 U.S.C. § 3161(h)(1)(D) (pretrial motions exclusion). The court set the trial for September 29, 2020, and excluded the time between July 7 and September 29, 2020 under the Speedy Trial Act's ends of justice provision—§ 3161(h)(7).

> [T]he Court cannot see any path forward to trial on the current date given that all of the public health data is going the wrong direction, including in many counties within the Eastern District of California. . . . Again, we will have to wait and see what's occurring with the public health data. The county health officer is currently saying no -- no gatherings, and under these circumstances the Court can't expect witnesses and potential jurors to come to the courthouse. . . .
>
> . . . .
>
> . . . With a jury trial you have many bodies in a courtroom for many hours a day, and that is a distinguishing aspect of a jury trial. There are -- there would be complicated logistics to allow proceeding in some way, but it's the number of hours in a day that people would be congregating that currently makes even considering going to a jury trial impossible. . . . [I]t may be that we aren't ultimately bound by the county health officer's orders, but the county health

officer's and the state health orders the Court believes are based on sound public health information that this Court cannot ignore.

On August 21, 2020, Walker filed two pretrial motions: one for disclosure of a confidential informant and one for a pretrial deposition. At a status conference held soon after, the court and parties agreed that a September trial was unlikely to occur given public health concerns, so the court vacated the September 29, 2020 trial date. Over Walker's objection, the court set his motions for hearing on September 28, 2020 and excluded time through that date under § 3161(h)(7)(B)(iv) (giving counsel reasonable time to prepare) and (h)(1)(D) (pretrial motions exclusion) of the Act.

During the September 28, 2020 hearing, the court noted that "our Facility Security Committee, is meeting again . . . . Every two weeks we check the public health data for each courthouse." The court then directed the parties to meet and confer regarding a trial date and to present a joint proposal with a timeline to the court at an October 5, 2020 status conference. The parties submitted their joint statement on October 2, 2020.[2] The court excluded the time between September 28 and October 5, again relying on

---

[2] In the joint statement, the government proposed a set of safety protocols, conditionally consented to a bench trial, and created a timeline for exploring the prospect of a jury trial. Walker agreed to some safety recommendations, but he disagreed with the government suggestion that "every individual in the courtroom [should] wear a mask," and was unwilling to waive his right to a jury trial. Walker also noted that while he did "not object to the government's proposed timeline," he believed "that the Court should also set a tentative trial date in this matter," an action the government felt was premature.

§ 3161(h)(7)(B)(iv) (giving counsel reasonable time to prepare).

The court set a November 16, 2020 trial date at the October 5, 2020 status conference (while also setting an October 26 "Trial Confirmation Hearing"). The court took judicial notice of public health data shared with the court's Facility Security Committee and excluded time between October 5, 2020 and October 26, 2020 under § 3161(h)(7)(A) and (B).

> So I'm excluding time through the new trial date of November 16th, and I am basing that on the persistence of the coronavirus pandemic in the Sacramento division of our court. . . . I'll place on the docket in this case as well the public health data that our court considers and closely reviews every two weeks. The last data reviewed by the Court's facility security committee on Friday shows no downward trend in coronavirus cases. The data is -- it comes from Johns Hopkins, a reputable public health institution. It's compiled for this Court by the Administrative Office of the U.S. Courts, and I'm taking notice of that information. I've referenced it in the past, but in the interest of full transparency, I am not putting it on the docket. This is the kind of data I have looked at each time when I have had to reach a decision in an individual case.

. . . .

For the time being that COVID-19 persists, there are some positive signs that if every member of society does his and her part that we may be able to suppress the virus as a community as a whole, but we are not there yet.  And so the Court is applying a principle of first do no harm, and that is applied to Mr. Walker as the defendant, all the people needed to carry out a trial, and especially -- not only but especially members of the jury pool who would be coming from many counties in Northern California many of which have not moved into an orange or yellow zone under the state's measurements. Those maps will be a part of what I put on the docket here.

So I'm finding that the Court cannot safely conduct a jury trial between now and the trial confirmation at least and likely until the time of the jury trial date that we've just set.

On October 26, 2020, the court continued the trial to February 9, 2021.  The court acknowledged that the Eastern District's general orders did "not preclude a judge from convening a jury," and instead directed judges to make "a case-by-case" determination.  The court then explained that it was "making such a [case-by-case] decision," and although it was "concerning" that Walker was "detained pending trial for a lengthy period of time," an "ends of justice" continuance was still appropriate based on, among other things, "[t]he most recent data," which showed that "the coronavirus pandemic . . . ha[d] not been suppressed"

in the Sacramento division of the District, the area from which the court would call jurors.  The court excluded the time through the new trial date—February 9, 2021—under § 3161(h)(7)(A) and (B).

On December 23, 2020, the parties stipulated to continue the trial confirmation hearing to January 11, 2021.  But then a COVID outbreak occurred at the jail where Walker was housed, and Walker's counsel sought and obtained a continuance of the trial confirmation hearing until January 25, 2021.  The court clarified that while the time previously excluded had been pursuant to § 3161(h)(7), the time from January 11 through 25, 2021 was excluded pursuant to § 3161(h)(3)(A)—unavailability of defendant or an essential witness.

On January 25, 2021, over Walker's objection, the court vacated the February 9, 2021 trial date and set a status conference for May 10, 2021.

> And I'm excluding time through that date based on 3161(h) generally, and I'm finding that it continues to be the case that the state of the coronavirus pandemic, which has not in any way been brought under control, precludes the ability to convene a jury trial with the attorneys and a jury pool summoned from all of the Northern California counties that feed into the Sacramento courthouse.  So I'm finding that this is a reason solely to exclude time, and I'm not relying on any impermissible condition.  I'm assuming the government is ready to go, the defense is ready to go, and I regret that we can't move sooner at this point.

On March 26, 2021, Walker filed a second motion for disclosure of a confidential informant and a motion to dismiss for violation of his speedy trial rights. The motion to dismiss was set for argument on May 10, 2021.

At the May 10, 2021 hearing on the motion to dismiss,[3] the court set a new trial confirmation date of June 28, 2021, and a new trial date of August 3, 2021. The court excluded time through June 1, 2021, based on § 3161(h)(1)(D), the pretrial motions exclusion, as well as § 3161(h)(7)(A).

> I would, at this point, also exclude time through June 1st based on the interest of justice exclusion that [the government] is referencing. And to clarify my thinking about that, at that earliest date in the Court's mind if the courthouses may open to the public. And at this point, although the Court had considered an evidentiary hearing in May, but it has been continued to June, the Court has not been prepared to -- this Court has not been prepared to convene a full jury trial up to the June 1st date given the trends and the infection rates in Sacramento and the surrounding counties.
>
> It may be that June 15th is the correct date when the state has indicated it will lift the tier system unless the public health data ends up frustrating that goal. But at this point this Court is comfortable, I believe the bench will be considering a recommendation through

---

[3] The court denied the motion on July 7, 2021.

the facility security committee. And it may be by June 1st the Court is satisfied that the pandemic no longer provides a basis for an interest of justice exclusion.

So, through June 1st for now, but if the government wants to move between June 1st supplementing the record for information on witnesses, it will consider whether or not an interest of justice exclusion should continue past June 1st up until the trial date of August 3rd.

On May 26, 2021, Chief Judge Mueller entered General Order No. 631, which stated that since issuance of the District's prior orders, effective COVID-19 vaccines had been developed and made available to the public. General Order No. 631 also noted that, given the improvement in the public health landscape, some judges had begun to schedule jury trials and request that jury pools be summoned, with the first jury trial scheduled to begin on June 2, 2021. The Order also stated that effective June 14, 2021, all courthouses in the Eastern District would be open to the public. But the Order clarified that district judges overseeing criminal cases could still continue matters, excluding time under the Speedy Trial Act based on COVID-19, if accompanied by findings to support exclusion.

On June 16, 2021, Walker and the United States stipulated to exclude certain time and to move the trial date from August 3, 2021 to August 24, 2021. The court approved the stipulation, excluding the time between June 17, 2021 and August 24, 2021 under § 3161(h)(7)(B)(iv) (giving counsel reasonable time to prepare).

The court denied the speedy trial motion to dismiss on July 7, 2021. The court applied *Olsen* and found that while two of the *Olsen* factors—the fact of detention and length of detention—favored Walker, all other factors did not. As to Walker's speedy trial claim based on the Sixth Amendment, the court listed the relevant factors, and found that "[o]n balance, the relevant factors weigh against finding Mr. Walker's due process rights were violated."

On August 2, 2021, the court continued the trial to August 31, 2021 and excluded the time from August 2 to August 31 under § 3161(h)(7)(B)(iv) (giving counsel reasonable time to prepare) and (h)(3)(A) (unavailability of a defendant or essential witness).[4]

Walker submitted a proposed jury instruction requiring the government to prove that he "knew the firearm had been transported in interstate commerce (or was willfully blind) or knew the firearm was manufactured outside of California." At the appropriate time during the trial, Walker argued that such an instruction was warranted, in part "because the gun says California on it." The trial judge refused to give the instruction, and the jury was instructed as to the elements of § 922(g) described above.

The jury found Walker guilty, and the court sentenced him to a term of 46 months. The court also found that Walker violated the terms and conditions of supervision and ordered him to serve 24 months consecutively to the 46 months imposed for the new conviction. Walker timely appealed.

---

[4] The docket notes that defense witnesses were unavailable.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review de novo a district court's decision to deny a motion to dismiss an indictment based on its interpretation of the Speedy Trial Act.  *See United States v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002).  But we review the district court's findings of fact and its "ends of justice" determinations for clear error.  *Olsen*, 21 F.4th at 1040.  We review de novo whether a defendant's Sixth Amendment rights were violated.  *United States v. Torres*, 995 F.3d 695, 701 (9th Cir. 2021).  We also review de novo whether jury instructions accurately defined the elements of the statutory offense.  *United States v. Perdomo-Espana*, 522 F.3d 983, 986 (9th Cir. 2008).

## III.

### A.  The Exclusions Under the Speedy Trial Act Were Proper and Walker's Sixth Amendment Rights Were Not Violated

We first address whether Walker's Speedy Trial Act and constitutional rights were violated.

### 1.        *Walker's Speedy Trial Act claim*

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  To give effect to this right, Congress enacted the Speedy Trial Act, which sets time limits between an accused's arraignment or indictment and when that person's criminal trial must commence.  Pub. L. No. 93-619, 88 Stat. 2076 (1975); *see Furlow v. United States*, 644 F.2d 764, 768–69 (9th Cir. 1981) (describing the Speedy Trial Act as the Sixth Amendment's "implementation").  The Speedy Trial Act requires that a

criminal trial begin within seventy days from either the date on which an indictment was filed, or the date on which a defendant makes an initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). But the Act contains "a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Zedner v. United States*, 547 U.S. 489, 497 (2006); *see* § 3161(h). Relevant here is the ends of justice provision, allowing for the exclusion of time if a district court finds "that the ends of justice served by taking such action [in continuing a trial and excluding time] outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A); *see also Olsen*, 21 F.4th at 1041 (explaining the ends of justice provision).

As we described in *Olsen*, "[i]n determining whether the ends of justice outweigh the best interest of the public and the defendant in a speedy trial, the district court must evaluate, 'among others,' several enumerated factors," each of which can be sufficient to warrant an exclusion of time if present. 21 F.4th at 1041 (quoting § 3161(h)(7)(B)). The first enumerated factor is "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." § 3161(h)(7)(B)(i).

Our court has already addressed the application of "the ends of justice" exclusion provision to criminal trials delayed by the pandemic. In *Olsen*, we held that "[n]othing in the Speedy Trial Act limits district courts to granting ends of justice continuances only when holding jury trials is *impossible*." 21 F.4th at 1045 (emphasis added).

> The Speedy Trial Act and our case law are silent as to what non-statutory factors district

courts should generally consider. Nevertheless, in the context of the COVID-19 pandemic, we find relevant the following non-exhaustive factors: (1) whether a defendant is detained pending trial; (2) how long a defendant has been detained; (3) whether a defendant has invoked speedy trial rights since the case's inception; (4) whether a defendant, if detained, belongs to a population that is particularly susceptible to complications if infected with the virus; (5) the seriousness of the charges a defendant faces, and in particular whether the defendant is accused of violent crimes; (6) whether there is a reason to suspect recidivism if the charges against the defendant are dismissed; and (7) whether the district court has the ability to safely conduct a trial.

*Id.* at 1046. But the *Olsen* factors are not exhaustive when applied to pandemic-related continuances, and the ultimate touchstone is still the statute—18 U.S.C. § 3161(h)(7). *See id.* at 1046–47.

Applying the relevant factors, 557 days elapsed between Walker's indictment and the first day of trial. In total, the district court excluded 553 of those days. However, Walker claims there were "at least 228 days" of non-excludable time.[5] The parties agree that much of the relevant time is

---

[5] In his Reply, Walker claims he opposed exclusion of "at least 265 days." But this number fails to take into account the parties' stipulation to exclude time between June 17, 2021 and August 24, 2021.

excludable for reasons unrelated to the ends of justice.[6] And while Walker contends there were improper exclusions beyond the "ends of justice" exclusions, such exclusions are immaterial if the district court did not err in its pandemic-related ends of justice exclusions. Several *Olsen* factors arguably favor Walker here. First, he was detained for a substantial period pending trial—approximately eighteen months. And second, Walker invoked his speedy trial rights relatively early.[7]

The fifth factor perhaps favors Walker, though our decision here to affirm would be the same even if this factor indisputably favored Walker. Though the § 922(g) offense of being a felon in possession of a firearm is a serious felony, it is not considered a "violent" offense.[8] *See, e.g.*, *United States v. Sahakian*, 965 F.2d 740, 742 (9th Cir. 1992) (holding that a felon-in-possession conviction is not a crime of violence under the Career Offender guideline).

But the *Olsen* factors supporting that the exclusions were in the interests of justice are far more substantial. Walker's prior record includes two felon-in-possession convictions, as

---

[6] The government argues that Walker may not challenge some of the exclusions he now appears to challenge because, according to the government, Walker consented to certain continuances. But Walker's briefs make clear that his challenge depends on the district court's COVID-related ends of justice exclusions. Because we uphold all those ends of justice exclusions, it is unnecessary for us to determine whether Walker consented to certain continuances.

[7] The district court found this factor did not weigh in Walker's favor: "Mr. Walker did not invoke his speedy trial rights since the inception of his case; rather he stipulated to exclude time up until June 15, 2020."

[8] The district court found that as to this factor, Walker "faces serious even if non-violent charges."

well as convictions for second-degree robbery, hit and run, and theft of a vehicle.[9]   And while it is unclear whether Walker "belongs to a population that is particularly susceptible to complications if infected with the virus," *Olsen*, 21 F.4th at 1046, the extent of Walker's argument on this factor is that it "may favor" him "if viewed categorically."   Accordingly, as the district court found, "Walker does not claim to be part of a population that is particularly at risk for complications related to COVID-19."[10]  Most critically, the district court did not clearly err in finding that it could not have safely conducted a trial during the challenged period.

The period most relevant to this appeal occurred between June 15, 2020, Walker's first post-arraignment hearing, and March 26, 2021, when Walker filed pretrial motions that paused the speedy trial clock.[11]   Putting aside the

---

[9] The district court found: "There is reason to suspect Mr. Walker might reoffend if the charges are dropped given his criminal history and recidivism with respect to felon in possession charges. *See* Compl. ¶ 11, ECF No. 1 (describing convictions for second degree robbery, hit and run, theft of vehicle, and two prior felon in possession of firearm violations)."

[10] In his Reply, Walker argues that "[t]his fourth factor may be considered neutral, as Mr. Walker was not more susceptible to COVID-19 [than] others, save for his prolonged exposure and lack of mitigation ability by being confined in the Sacramento County jail. (Which ultimately resulted in him catching the virus.)"   We view this as a concession that the fourth factor does not favor Walker, and there is no evidence in the record that Walker belongs to a population that is particularly susceptible to complications if infected with the virus.

[11]   Not all the time between June 15, 2020 and March 26, 2021 is contested.  Walker does not challenge the Speedy Trial Act exclusions from August 21, 2020 to September 28, 2020 (pretrial motions) and from January 11, 2021 to January 25, 2021 (unavailability of defendant).

unchallenged exclusions, the district court excluded this time under the ends of justice provision of § 3161(h)(7) because of the pandemic.  The court found it "did not have the ability to safely conduct a trial at the time it granted continuances and excluded time."  The court did not clearly err in making this finding.  The court also found, citing *Olsen*, that "the ends of justice served by granting [the] continuance[s] outweigh the best interest of the public and the defendant in convening a speedy trial."  It did not err in making this determination.

During the challenged period, all courthouses in the Eastern District of California were closed to the public.  In-person jury trials did not resume until June 2021.  And the district court made regular, case-specific factual findings about its own ability to hold a jury trial safely.  Indeed, the court ordered counsel to meet and confer in September 2020, before there were any vaccines, to try to come up with a trial date and a COVID-19-safe plan.  The district court's willingness to hold jury trials changed when the courthouse was reopened to the public (after the availability of vaccines), and courts around the county began to "open up" once again.  As courts around the country have noted, and as we noted in *Olsen*, the pandemic "presented courts with unprecedented challenges."  21 F.4th at 1040.  Such challenges required balancing the right to a speedy and public trial with the "public health and safety issues posed by COVID-19" to everyone from prospective jurors to defendants, attorneys, and court personnel.  *Id.* at 1049.

The district court did not clearly err in its determinations based on COVID-19.  The court tried, admirably in our view, to tie its exclusions to public health data and recommendations.  It responded to an evolving and unpredictable situation by considering updated data every

two weeks.  It ordered the parties to submit a joint proposal with safety protocols and a timeline for trial.  The district court did not act lightly and did not dismiss out of hand Walker's speedy trial concerns.  The trial judge was, as she said, trying to follow the "principle of first do no harm."

Walker was entitled to a speedy trial.  But in 2020, COVID-19 was the third leading cause of death in the United States.[12]  And it is estimated that over one million people in the United States and 6.8 million people worldwide have died from COVID-19.[13]  After vaccines were released to the public in 2021, deaths in the United States decreased significantly.[14]  The district court acted commendably in doing its best to balance speedy trial rights and public safety in the face of what is hopefully a once-in-a-lifetime pandemic.[15]  The district court did not err—much less clearly err—in its ends of justice determination, and thus we affirm the denial of the Speedy Trial Act motion to dismiss.

---

[12] *See* Sherry L. Murphy et al., *Mortality in the United States, 2020*, NCHS Data Brief No. 427, Nat'l Ctr. for Health Stats. 1 (Dec. 2021), https://www.cdc.gov/nchs/data/databriefs/db427.pdf.

[13] WHO Coronavirus (COVID-19) Dashboard, https://covid19.who.int (last visited Feb. 20, 2023).

[14] *See* WHO Coronavirus (COVID-19) Dashboard: United States of America, https://covid19.who.int/region/amro/country/us (last visited Feb. 20, 2023).

[15] Walker's argument that the emergence of vaccines against COVID-19 should not matter because the district court did not require jurors to be vaccinated is unpersuasive.  The determination that safety required a significant pause in trials is not undercut by the district court's decision not to categorically exclude from jury service unvaccinated individuals.

*2.    Walker's Sixth Amendment claim*

Walker also raises constitutional claims based on his pretrial detention.  The Sixth Amendment's speedy trial provision is "an important safeguard to prevent undue and oppressive incarceration prior to trial."  *United States v. Ewell*, 383 U.S. 116, 120 (1966).  And as this court has stated in the context of COVID-19 delays, "at some point, pretrial detention can become excessively prolonged, and therefore punitive, resulting in a due process violation."  *Torres*, 995 F.3d at 708 (internal quotation marks omitted) (quoting *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987)).  "The point at which detention constitutes a due process violation requires a case-by-case analysis."  *Id.* (citation omitted).  And when "evaluating whether a due process violation has occurred," courts must "weigh the following factors: (1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention under the Bail Reform Act." *Id.*  The Bail Reform Act requires courts to consider: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).  Under the Sixth Amendment, courts also conduct "ad hoc" balancing of factors including the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also United States v. Lonich*, 23 F.4th 881, 893 (9th Cir. 2022) (postdating the Speedy Trial Act).

Walker was detained for about eighteen months before being tried, a significant period.  *See United States v. Myers*,

930 F.3d 1113, 1119 (9th Cir. 2019) (noting that, in general, delays of one year are presumptively prejudicial). But we have found that longer periods do not necessarily weigh heavily in a defendant's favor. *See United States v. King*, 483 F.3d 969, 976 (9th Cir. 2007). All other relevant factors weigh against Walker. The pandemic, not the prosecution, caused the delay.[16] And the Bail Reform Act weighing mirrors the *Olsen* factors. Walker had five prior felony convictions—including prior convictions for being a felon in possession of a firearm—and while an offense under § 922(g)(1) is considered nonviolent, *see Sahakian*, 965 F.2d at 742, it is a serious felony. Moreover, the weight of evidence against Walker on the gun charge was overwhelming: His neighbor called the police because she saw him waving a gun in public and threatening to kill someone. When officers searched his home, they found the gun next to paperwork bearing Walker's name. These and other facts found by the district court also support the conclusion that the community faced danger or other risks if Walker had been released.[17]

---

[16] The district court found that "the prosecution did nothing to delay this case."

[17] The original detention order found that the reasons for the court detaining Walker included: the strong weight of the evidence against Walker; Walker's prior criminal history; Walker's participation in criminal activity while on probation, parole, or supervision; Walker's history of violence or use of weapons; Walker's prior attempt(s) to evade law enforcement; and Walker's prior violations of probation, parole, or supervised release. Walker did not appeal the Magistrate Judge's detention order to the district court. In rejecting Walker's constitutional claims, the district court found that Walker "presents no evidence from which the court can conclude he does not pose a danger to any other person or the community. The evidence supports Mr. Walker's detention

Walker's claim also fails under the *Barker v. Wingo* balancing factors. In *Barker*, the Court held that a delay between arrest and trial of "well over five years" caused in "good part" by "the Commonwealth's failure" was outweighed by the fact that prejudice was minimal and the fact that Barker "did not want a speedy trial." 407 U.S. at 533–34. Here, although Walker was insistent about his right to a speedy trial and the time between his arrest and conviction was substantial, these factors are outweighed by the reason for the delay and lack of legal prejudice to Walker. As in *Barker*, "there is no claim that any of [Walker's] witnesses died or otherwise became unavailable owing to the delay." *Id.* Similarly, Walker raises no "lapses of memory" which might have been "significant to the outcome" of his case. *Id.* at 534.

Reviewing de novo, we affirm the district court's decision not to dismiss the indictment, as we find that the delay did not violate Walker's constitutional rights.

## B. The District Court Correctly Refused the Requested Mens Rea Jury Instruction

Walker contends the district court erred by refusing to give his requested mens rea jury instruction—that to convict, the jury had to find that he *knew* the handgun he possessed had traveled in or affected interstate commerce.

The federal felon-in-possession statute makes it unlawful for any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce,

under the Bail Reform Act to prevent danger to the community and assure he will appear in court."

any firearm or ammunition."   18 U.S.C. § 922(g)(1).   18 U.S.C. § 924 provides that any person who "knowingly violates" § 922(g) "shall be fined under this title, imprisoned for not more than 15 years, or both."   § 924(a)(8).   Walker claims that the statutory requirement of a knowing violation requires proof that he knew his gun had traveled in or affected interstate commerce.

In *United States v. Stone*, 706 F.3d 1145, 1146 (9th Cir. 2013), we rejected this precise argument and held that there is no mens rea for the *affecting commerce* element of the felon-in-possession statute.  After noting that "the context in which §§ 922(g)(1) and 924(a)(2) were enacted does not suggest Congress intended to extend the mens rea requirement to the interstate commerce element," [18] we concluded that "the interstate commerce element [of those statutes] is purely jurisdictional" and intended to ensure the constitutionality of these federal criminal laws.  *Id.* at 1147.

Walker first argues that *Stone* is distinguishable because of the "specific and unusual facts" of this case: the gun Walker was convicted of possessing was both manufactured in and possessed by him in California.  This argument fails because *Stone* admits of no such limitation—its holding is clear and categorical: the "knowingly" requirement applicable to § 922(g) does not apply to the jurisdictional interstate commerce element.[19]

---

[18] Though Stone was convicted for being a felon in possession of *ammunition* in violation of § 922(g)(1), 706 F.3d at 1145, Walker's conviction for possession of a firearm occurred pursuant to the same subsection.

[19] Walker also relies on *Flores-Figueroa v. United States*, 556 U.S. 646 (2009). But as the government points out, the defendant in *Stone* also relied on *Flores-Figueroa*, which had been decided four years before

But Walker's primary argument is that "the textual analysis that forms the holding in *Rehaif* [*v. United States*, 139 S. Ct. 2191 (2019),] effectively overrules [the] conclusion in *Stone*." In *Rehaif*, the Supreme Court held that in a prosecution under §§ 922(g) and 924(a)(2), the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to a category of persons barred from possessing a firearm. *See* 139 S. Ct. at 2195. But *Rehaif* explicitly disclaims imposing any mens rea requirement on the federal jurisdictional requirement. "No one here claims that the word 'knowingly' modifies the statute's jurisdictional element. Jurisdictional elements do not describe the 'evil Congress seeks to prevent,' but instead simply ensure that the Federal Government has the constitutional authority to regulate the defendant's conduct (normally, as here, through its Commerce Clause power)." *Id.* at 2196 (quoting *Luna Torres v. Lynch*, 136 S. Ct. 1619, 1630–31 (2016)).[20] *Rehaif*, thus, did not overrule *Stone*.

Nor is *Stone*'s holding "clearly irreconcilable" with *Rehaif*. *Miller*, 335 F.3d at 893 (holding that prior circuit authority binds unless its reasoning or theory "is clearly irreconcilable with the reasoning or theory of intervening higher authority"). The concern animating *Rehaif*—whether Congress intended to impose felony criminal penalties upon

---

*Stone*, and the court in *Stone* rejected the same argument Walker makes here. *See Stone*, 706 F.3d at 1146–47.

[20] In his dissent, Justice Alito, joined by Justice Thomas, wrote that while one interpretation of the statute could impose the requirement that a defendant "knew that what he did was 'in or affecting commerce[,]'" both "the parties (and the majority) disclaim this reading." 139 S. Ct. at 2205 (Alito, J., dissenting).

those who do not know that they belong to a category of persons barred from possessing a firearm—simply does not apply here.  The jury was instructed that to convict Walker, it had to be convinced beyond a reasonable doubt that when Walker possessed the semiautomatic handgun, he "knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year."

We also note that while other defendants have advanced the argument Walker advances, no court of appeals has ever agreed with that argument.  Cases predating *Rehaif* have clearly articulated that there is no "knowledge" aspect to § 922(g)'s jurisdictional element.  *See, e.g.*, *United States v. Garcia-Hernandez*, 803 F.3d 994, 997 (8th Cir. 2015) ("The mens rea requirement in § 924(a)(2) does not apply to the interstate-commerce element of § 922(g)(1)."); *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("A defendant's knowledge or ignorance of the interstate nexus is irrelevant.").   And cases following *Rehaif* have not changed course.  *See, e.g.*, *United States v. Trevino*, 989 F.3d 402, 406 (5th Cir. 2021) (listing the elements of a § 922(g) conviction, noting their compliance with *Rehaif*, and not including knowledge that the firearm traveled in interstate commerce); *United States v. Raymore*, 965 F.3d 475, 484 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2814 (2021) ("[P]roof that the firearm traveled through interstate commerce can satisfy the statute's nexus requirement.").

\* \* \*

For these reasons, we affirm Walker's conviction and the revocation of his supervised release.