PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.

EDWIN GIOVANNI RODRIGUEZ-AMAYA,
      *Defendant-Appellant.*

No. 06-4514

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:05-cr-00518-GBL)

Argued: February 1, 2008

Decided: April 11, 2008

Before WILLIAMS, Chief Judge, WILKINSON, Circuit Judge, and
Patrick M. DUFFY, United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by published opinion. Chief Judge Williams wrote the opinion, in which Judge Wilkinson and Judge Duffy joined.

## COUNSEL

**ARGUED:** Geremy Charles Kamens, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Michael John Frank, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Michael S. Nachmanoff, Acting Federal Public Defender, Alexandria, Virginia, for

Appellant. Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

WILLIAMS, Chief Judge:

Edwin Giovanni Rodriguez-Amaya, an El Salvadoran national, appeals his conviction for unlawful reentry after deportation by an aggravated felon ("unlawful reentry"), in violation of 8 U.S.C.A. § 1326(a) and (b)(2) (West 2005), arguing that his indictment and subsequent conviction violated the Speedy Trial Act, 18 U.S.C.A. § 3161(b) (West 2000). Because the time Rodriguez-Amaya was detained by United States Immigration and Customs Enforcement ("ICE") on administrative charges pending his removal was not detention "in connection with" his arrest for violating 8 U.S.C.A. § 1326(a) and (b)(2), we conclude that Rodriguez-Amaya's indictment did not violate the Speedy Trial Act. We therefore affirm his conviction.

I.

In 1996, Rodriguez-Amaya was convicted of aggravated sexual battery of a minor—specifically, an eleven year old girl—in Fairfax County, Virginia and sentenced to eight years imprisonment. Under 8 U.S.C.A. § 1101(43)(A), this conviction constituted an "aggravated felony" for purposes of the Immigration and Nationality Act ("INA"). 8 U.S.C.A. § 1101(43)(A) (West 2005). Pursuant to the INA, aggravated felons are subject to deportation, 8 U.S.C.A. § 1227(a)(2)(A)(iii) (West 2005). Accordingly, Rodriguez-Amaya was deported to El Salvador around June 19, 1998.

Rodriguez-Amaya, however, was not deterred by his deportation and, at some point, he returned to the United States. In April 2005, the Department of Homeland Security received an anonymous tip that Rodriguez-Amaya had reentered the United States and was associated with the street gang Mara Salvatrucha, or "MS-13." Acting on this tip, Special Agent Julian Doyle of ICE administratively arrested Rodriguez-Amaya on May 17, 2005 and issued a "Notice of

Intent/Decision to Reinstate Prior Order," which informed Rodriguez-Amaya of the United States' intent to reinstate the 1998 deportation order and remove Rodriguez-Amaya to El Salvador. Rodriguez-Amaya signed this form. Because Rodriguez-Amaya was previously deported for committing an aggravated felony, the INA required that ICE detain Rodriguez-Amaya pending his deportation. 8 U.S.C.A. § 1226(c)(1)(B) (West 2005).

On June 6, 2005, ICE briefly transferred custody of Rodriguez-Amaya to the Commonwealth of Virginia, which desired to prosecute him for failure to register as a sex offender. While Rodriguez-Amaya was still in Virginia's custody, on July 21, 2005, Agent Doyle requested a criminal complaint and arrest warrant from the United States District Court for the Eastern District of Virginia against Rodriguez-Amaya for unlawful reentry, which the court issued. No further action was taken by Agent Doyle at the time, and Rodriguez-Amaya remained in Virginia's custody.

On October 7, 2005, Virginia returned Rodriguez-Amaya to ICE's custody; ICE's Department of Detention and Removal Operations then resumed processing Rodriguez-Amaya in preparation for his removal to El Salvador. Winston Chow, the Deportation Officer in charge of Rodriguez-Amaya's administrative removal, was unaware of the criminal complaint filed against Rodriguez-Amaya. Thereafter, on October 25, 2005, Agent Doyle learned that Rodriguez-Amaya had been returned to an ICE custodial facility in southern Virginia. Rodriguez-Amaya, at Agent Doyle's request, was transported to Alexandria, Virginia. On October 27, 2005, Agent Doyle executed the criminal arrest warrant against Rodriguez-Amaya for unlawful reentry. At that point, Rodriguez-Amaya was transferred from ICE's custody to the United States Marshals Service and made his initial appearance before a magistrate judge on that day.

Following a detention hearing conducted on November 1, 2005, Rodriguez-Amaya was ordered detained pending trial. On November 23, 2005, twenty-six days after the execution of the federal criminal arrest warrant, a federal grand jury sitting in the Eastern District of Virginia indicted Rodriguez-Amaya on one count of unlawful reentry, in violation of 8 U.S.C.A. § 1326(a) and (b)(2).

Before trial, Rodriguez-Amaya moved to dismiss the indictment for violating the Speedy Trial Act, 18 U.S.C.A. § 3161(b), which requires indictment within thirty days of arrest. The district court held a hearing at which both Agent Doyle and Officer Chow testified. Agent Doyle testified that he had no role in Rodriguez-Amaya's return to ICE administrative custody on October 7, 2005, and that he did not learn that Rodriguez-Amaya had been returned to ICE custody until October 25, 2005. Officer Chow testified that he did not know of the federal arrest warrant on October 7, 2005, and that during the period from October 7 to October 25, he was actively arranging for Rodriguez-Amaya's removal from the United States. Officer Chow further testified that the removal process still had not been completed on October 25 and that Rodriguez-Amaya's length of stay in administrative detention was not unusual. Although Officer Chow was responsible for reviewing the FBI's National Crime Information Center ("NCIC") records, which should have contained a record of the July 21, 2005 criminal complaint and arrest warrant, he did not learn of the warrant through NCIC (and does not recall ever running an NCIC check in this case). Instead, Officer Chow learned of the pending federal criminal charges only after contacting Agent Doyle on October 25, 2005 to obtain Rodriguez-Amaya's "alien file" or "A file." This file contained documents that Officer Chow needed to arrange an interview with the El Salvadoran consulate, which would then issue the travel document necessary for Rodriguez-Amaya to return to El Salvador. Rodriguez-Amaya did not offer any witnesses in rebuttal, and the district court denied his motion to dismiss the indictment.

Following the denial of the motion to dismiss, the district court conducted a bench trial, after which it found Rodriguez-Amaya guilty of unlawful reentry and sentenced him to 41 months imprisonment. Rodriguez-Amaya timely appealed, and we possess jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 2006).

II.

On appeal, Rodriguez-Amaya renews his contention that the indictment against him violated the Speedy Trial Act. We "review de novo the district court's interpretation of the Speedy Trial Act," *United States v. Bush*, 404 F.3d 263, 272 (4th Cir. 2005) (internal quotation

marks, alteration, and citation omitted), and review "any of the court's related factual findings for clear error," *United States v. Leftenant*, 341 F.3d 338, 342 (4th Cir. 2003).

The Speedy Trial Act, in relevant part, provides:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

18 U.S.C.A. § 3161(b).

The term "offense" is defined as "any Federal *criminal* offense which is in violation of any Act of Congress and is triable by any court established by Act of Congress." 18 U.S.C.A. § 3172(2) (West 2000) (emphasis added). If the thirty-day time limit in § 3161(b) is not met, the "complaint shall be dismissed or otherwise dropped." 18 U.S.C.A. § 3162(a)(1) (West 2000).

A.

Rodriguez-Amaya contends that the Speedy Trial Act's thirty-day limit began running on October 7, 2005, when he was returned to ICE's custody. As of that date, he argues, he was held in federal custody "in connection with" an "offense," specifically the outstanding criminal arrest warrant and complaint for unlawful reentry. Using October 7 as the starting date, Rodriguez-Amaya claims that fifty-six days passed between his arrest and indictment, well outside the Speedy Trial Act's permissible thirty-day time limit. The Government argues that civil detention, including detention by ICE, cannot trigger the limits of the Speedy Trial Act, and that the Act's time limits did not begin running until October 27, 2005, when Agent Doyle served the criminal arrest warrant on Rodriguez-Amaya.

We have previously held that the Speedy Trial Act requires *federal* action to apply. *See United States v. Woolfolk*, 399 F.3d 590, 596 (4th Cir. 2005) ("[f]or this [thirty-day time] limit to commence, a person *must be held for the purpose of answering to a federal charge*") (internal quotation marks omitted); *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995) (explaining "the arrest must be a federal arrest upon a federal charge" for the Speedy Trial Act time limit to commence) (internal quotation marks omitted). The question we face here is what *type* of federal action is necessary to trigger the running of the thirty-day time limit. As always, we start with the statute's plain language in formulating an answer. *U.S. Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004).

Looking to this plain language, we conclude, in agreement with every other circuit to have considered the issue, that the Speedy Trial Act does not apply to civil detention generally, and to ICE administrative detention specifically. *See United States v. Dyer*, 325 F.3d 464, 468 (3d Cir. 2003); *United States v. Garcia-Martinez*, 254 F.3d 16, 19 (1st Cir. 2001); *United States v. De La Pena-Juarez*, 214 F.3d 594, 597 (5th Cir. 2000); *United States v. Noel*, 231 F.3d 833, 836 (11th Cir. 2000); *United States v. Grajales-Montoya*, 117 F.3d 356, 366 (8th Cir. 1997); *United States v. Cepeda-Luna*, 989 F.2d 353, 355-56 (9th Cir. 1993). The Speedy Trial Act requires arrest in connection with an "offense," that is, a "Federal *criminal* offense." 18 U.S.C.A. § 3172(2) (emphasis added). Accordingly, we have little trouble concluding that the plain language of the Speedy Trial Act limits the Act's coverage to persons detained in connection with a federal *criminal* arrest.

### B.

Rodriguez-Amaya, likely aware that his first argument was a non-starter, contends in the alternative that, even if civil detention generally does not trigger the protections of the Speedy Trial Act, we should recognize a "ruse exception" to this general rule in order to cover situations where administrative or civil detention amounts to nothing but a cover for criminal detention. *See Cepeda-Luna*, 989 F.2d at 357-58. On this point, we agree. We have accepted a "ruse exception" of sorts for defining what constitutes "federal" action, *see Woolfolk*, 395 F.3d at 596 & n.7, and our sister circuits have been in

agreement in adopting an exception in this context as well. This exception to the general rule that the Speedy Trial Act does not apply to civil detentions was initially carved out in *Cepeda-Luna*, in which the Ninth Circuit reasoned that:

> The requirements of the Act would lose all meaning if federal criminal authorities could collude with civil or state officials to have those authorities detain a defendant pending federal criminal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act. If a court found evidence of such collusion, the provisions of the Act could be applied to state or civil detentions.

989 F.2d at 357. *See also Garcia-Martinez*, 254 F.3d at 20 ("We agree with the position taken by all of the courts of appeals that have addressed the issue that a civil arrest by the INS does not trigger the [Act] in the absence of collusion or evidence that the detention was for the sole or primary purpose of preparing for criminal prosecution."); *De La Pena-Juarez*, 214 F.3d at 598 (adopting "ruse exception" but holding that it applies only "where the defendant demonstrates that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution"); *Noel*, 231 F.3d at 836 ("We agree with the Fifth Circuit's recent decision that [this ruse] exception will provide protection for detained aliens, but that the exception should only be applied when the defendant demonstrates that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution." (internal quotation marks and citation omitted)); *Grajales-Montoya*, 117 F.3d at 366 (holding that a defendant failed to prove that his civil detention by the INS was a ruse to evade the Speedy Trial Act).

As the Fifth Circuit explained in adopting the ruse exception in this context, the exception is "an effective way of protecting against the possibility of collusion between federal criminal authorities and civil or state officials." *De La Pena-Juarez*, 214 F.3d at 598. We agree, and hold that the Speedy Trial Act includes a ruse exception in the context of civil detention, such that the time limits of the Speedy Trial Act are triggered when the "primary or exclusive purpose of the civil detention was to hold [a defendant] for future criminal prosecution." *Id.* Because this ruse exception is, by definition, an exception to the

general rule that civil detentions do not implicate the time limits of the Speedy Trial Act, we further hold that civil detainees, like Rodriguez-Amaya, bear the burden of proving the exception applies in a given case. *Id.*; *see also Noel*, 231 F.3d at 836.

Turning to the case at bar, we have little trouble concluding that the ruse exception does not apply. The district court held a hearing on the matter, with testimony from only Agent Doyle and Officer Chow. Both testified, under oath, that no collusion occurred between ICE and criminal authorities. Moreover, Chow further testified that he had no knowledge of the outstanding criminal arrest warrant on Rodriguez-Amaya and that he had more administrative work to be completed before Rodriguez-Amaya could be removed to El Salvador. Agent Doyle likewise testified that he was unaware Rodriguez-Amaya was returned to ICE custody until October 25, 2005, and that, upon receiving this information, he immediately had Rodriguez-Amaya transported to Alexandria for his criminal arrest. As the district court aptly noted, Rodriguez-Amaya's ICE custody following his return from state custody "had the clear and documented 'administrative detention purpose' of facilitating the government's deportation of [him]." (J.A. at 127.) Moreover, 8 U.S.C.A. § 1226(c)(1)(B) mandates that the Government detain aggravated felons, like Rodriguez-Amaya, pending their removal. We thus think it pellucidly clear that Rodriguez-Amaya has failed to carry his burden of proving his ICE detention beginning on October 7, 2005, was for the primary or exclusive purpose of future criminal investigation.

### III.

For the foregoing reasons, Rodriguez-Amaya's conviction for unlawful reentry is

*AFFIRMED*.