**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 21-4269**

───────────

UNITED STATES OF AMERICA

　　　　Plaintiff - Appellee

v.

QUOTEZ TYVICK PAIR

　　　　Defendant - Appellant.

───────────

Appeal from the United States District Court for the Eastern District of Virginia at Richmond.  Robert E. Payne, Senior District Judge.  (3:20−cr−00003−REP−1)

───────────

Argued:  September 19, 2023　　　　　　　　Decided:  October 24, 2023

───────────

Before DIAZ, Chief Judge, and WILKINSON and BENJAMIN, Circuit Judges.

───────────

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Diaz and Judge Benjamin joined.

───────────

**ARGUED:**  Miriam Ruth Airington-Fisher, AIRINGTON LAW PLLC, Richmond, Virginia, for Appellant.  Jacqueline Romy Bechara, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Raj Parekh, Acting United States Attorney, Alexandria, Virginia, Olivia L. Norman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

───────────

WILKINSON, Circuit Judge:

Following a series of COVID-19-related continuances and other setbacks, Quotez Tyvick Pair was convicted by a jury of two counts of fentanyl distribution. Pair argues that these delays violated his statutory and constitutional rights to a speedy trial. 18 U.S.C. § 3161; U.S. Const. amend. VI. Pair also argues the district court erred in denying his motion for acquittal. For the reasons that follow, we affirm the judgment of the district court.

## I.

In late 2019, Pair sold illicit drugs to a confidential informant in two controlled buys arranged by law enforcement. The informant believed he was buying heroin, but lab tests revealed that what he actually purchased was fentanyl. Pair was soon after indicted by a grand jury of two counts of distributing fentanyl in violation of 21 U.S.C. § 841(a)(1). Pair made his initial appearance after the indictment on January 31, 2020, and trial was set for April 6.

The looming pandemic, of course, had other plans. The very day Pair was indicted, health officials confirmed the first case of COVID-19 in the United States. Roni Caryn Rabin, *First Patient with the Mysterious Illness Is Identified in the U.S.*, N.Y. Times, Jan. 22, 2020, at A10.  Nine days later, the World Health Organization declared a global health emergency. Sui-Lee Wee et. al, *W.H.O. Declares Emergency as Cases Spread Beyond Epicenter*, N.Y. Times, Jan. 31, 2020, at A6. In those early months of 2020, a new reality set in. Nations around the world announced stringent limitations on in-person interaction and nonessential travel; businesses ground to a halt; and death tolls mounted.

2

**A. In-person proceedings continued from March 16 through September 13**

In response to the escalating public health crisis, Chief Judge Mark S. Davis of the United States District Court for the Eastern District of Virginia issued a series of General Orders over the first half of 2020, the cumulative effect of which suspended criminal jury trials in the district from March 16 through September 13. *See* General Order 2020-02 (continuing all proceedings through April 17); General Order 2020-06 (supplementing findings behind Order 2020-02); General Order 2020-07 (continuing all proceedings through May 1); General Order 2020-12 (continuing all proceedings through June 10); General Order 2020-16 (continuing criminal jury trials through July 6); and General Order 2020-19 (continuing criminal jury trials through September 13).

Each of the General Orders contained detailed findings about the effect of the COVID-19 pandemic on courts' ability to conduct fair and safe jury trials. For example, they described the inability of courts to "adequately protect the safety of jurors in light of the fact that they need to sit together, listen to evidence together, and deliberate together" in confined spaces; the "grave concerns as to whether jurors could provide their full and complete attention during a multi-day or multi-week federal trial in light of the health risks"; and the "inevitabl[e] issues with witness availability" in light of "stay home" orders in the vicinity. General Order 2020-06 at 3–4. Based on those findings, each General Order concluded that the continuance period would be excluded from speedy trial calculations pursuant to 18 U.S.C. § 3161(h)(7)(A). *See, e.g.*, General Order 2020-02 at 4.

Following the first three General Orders—2020-02, 2020-06, and 2020-07—the government moved to continue Pair's trial. Pair did not object. In granting the motion, the

3

district court incorporated the findings of the then-issued General Orders and found that "the ends of justice outweigh[ed] the best interest of the public and the defendants in a . . . speedy trial, and that the failure to gran[t] such a continuance would prevent the completion of full and fair jury proceedings and result in a miscarriage of justice," citing 18 U.S.C. § 3161(h)(7)(A). J.A. 34. The court extended the period for commencing trial to May 27.

### B.  Pair's trial continued to September 30

Three General Orders further suspending trials issued in the summer of 2020: General Orders 2020-12, 2020-16, and 2020-19. Accordingly, on July 2, the district court issued a case-specific continuance delaying Pair's trial to September 30. The district court incorporated the findings of General Order 2020-19 and found that the ends of justice supported the continuance under 18 U.S.C. § 3161(h)(7)(A).

### C.  Pair's trial continued to December 8

In September the trial stalled again due to a different kind of emergency. Pair's third attorney moved to continue trial because she had been diagnosed with a medical condition requiring urgent surgery. The court consulted with Pair and found that he would prefer to have new counsel appointed rather than wait for his third attorney to recover from surgery. The district court again continued trial to December 8, finding it was "in the interest of justice" to allow the newly appointed attorney time to prepare. J.A. 130.

### D.  Pair moves to dismiss the indictment and trial is continued to March 8

The final months of 2020 and early months of 2021 saw more complications. On October 21, Pair's attorney filed a motion to dismiss the indictment for a violation of his

rights to a speedy trial. The district court continued Pair's trial pending the resolution of the motion, but there were more pandemic-related delays in store.

Chief Judge Davis was soon to issue another set of General Orders, the cumulative effect of which suspended criminal jury trials through February 28, 2021. General Order 2020-22 (suspending criminal trials through January 18); General Order 2021-01 (suspending criminal trials through February 28). These orders cited worsening local conditions due to the pandemic and again determined that the relevant periods would be excluded from speedy trial calculations under § 3161(h)(7)(A). *See, e.g.*, General Order 2021-01 at 3–6.

Pursuant to these Orders, on January 12 the district court continued Pair's trial to March 8, the "earliest date possible due to other criminal trials scheduled in the courthouse and defense counsel's availability." *United States v. Pair*, 515 F. Supp. 3d 400, 404 n.5 (E.D. Va. 2021). The court incorporated the speedy trial findings of the most recent General Order and found that the record in Pair's case supported those findings, as counsel for the government was forced to quarantine after a potential exposure. The court determined that the continuance served the ends of justice and outweighed the best interest of Pair and the public in a speedy trial under § 3161(h)(7)(A).

### E.  The district court denies Pair's motion to dismiss

On January 27, the district court denied Pair's motion to dismiss the indictment based on a violation of the Speedy Trial Act. The district court excluded the following periods of delay from the speedy trial calculation: February 5; March 16 through September 22; and September 24 through January 27, 2021. *Pair*, 515 F. Supp. 3d 400 at 405. February

5, the date of Pair's arraignment, was excluded under § 3161(h)(1). *Id.* March 16 through September 22—the period of delay resulting from the first set of General Orders and the July 2 continuance order—was excludable under § 3161(h)(7)(A). *Id.* at 405–12. Likewise, September 24 through January 27—the period of delay resulting from the September 24 continuance order and Pair's motion to dismiss—was excludable under § 3161(h)(7)(A) and § 3161(h)(1)(D). *Id.* at 412–15. In light of the excludable time, the district court found that fewer than seventy days had accrued towards Pair's speedy trial clock. *Id.* at 415. Accordingly, the district court found that Pair's rights under the Speedy Trial Act were not violated. *Id.*

On February 26, the district court denied Pair's motion to dismiss the indictment based on his constitutional right to a speedy trial. *United States v. Pair*, 522 F. Supp. 3d 185 (E.D. Va. 2021). The district court weighed the factors put forth in *Barker v. Wingo*, 407 U.S. 514 (1972), and found that they favored a finding that Pair's constitutional right to a speedy trial had not been violated. *Pair*, 522 F. Supp. 3d at 191–200.

**F. Pair is convicted and moves for acquittal**

Roughly a year after the COVID-19 outbreak, the district court was able to manage more successfully the complexities of holding trial in a pandemic that had already claimed hundreds of thousands of lives. On March 8, 401 days after his initial appearance, Pair's trial began. Ultimately, the jury found Pair guilty on both counts of distributing fentanyl.

Pair's counsel filed a motion for a judgment of acquittal based on the alleged insufficiency of the evidence for Pair's convictions. Pair followed with a pro se motion on

6

similar grounds. The district court found the evidence was sufficient to support the convictions and denied both motions.

Pair timely appealed the orders denying his motion to dismiss the indictment and his motion for judgment of acquittal.

## II.

Pair first challenges the district court's finding that his rights under the Speedy Trial Act were not violated. We review a district court's decision to exclude time under the Speedy Trial Act de novo and its factual findings for clear error. *United States v. Jarrell*, 147 F.3d 315, 317 (4th Cir. 1998); *United States v. Rodriguez-Amaya*, 521 F.3d 437, 440 (4th Cir. 2008).

## A.

The Speedy Trial Act requires that a criminal defendant's trial "commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The Act, however, "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 497 (2006). To allow for such flexibility, the Act specifies various periods of delay that are excluded from the speedy trial clock. *See* 18 U.S.C. § 3161(h). In this case, the excludable delays fall under two provisions: (1) delays resulting from other proceedings concerning the defendant, § 3161(h)(1); and (2) ends-of-justice continuances, § 3161(h)(7)(A).

## B.

7

Pair's speedy trial clock began to tick on February 1, 2020, the day following his initial appearance. *See* 18 U.S.C. § 3161(c)(1); *United States v. Stoudenmire*, 74 F.3d 60, 63 (4th Cir. 1996). Pair proceeded to trial 401 days later. Pair concedes that the date of his arraignment, February 5, is excluded. *See* 18 U.S.C. § 3161(h)(1). He challenges, however, the exclusion of several periods of delay. We hold that 357 days are properly excludable from the speedy trial calculation, meaning that at most 44 speedy trial days accumulated between his initial appearance and trial.

We recognize five periods of exclusion:

(1) the General Order continuances (March 16–September 13, 2020);

(2) the district court's July continuance (July 2–September 22, 2020);

(3) the district court's September continuance (September 24–November 19, 2020);

(4) the motion-to-dismiss continuance (October 21, 2020–January 27, 2021); and

(5) the district court's January continuance (January 19–March 7, 2021).

These exclusions fall into two categories: the motion-to-dismiss continuance was a delay resulting from other proceedings concerning the defendant under § 3161(h)(1)(D) and the rest of the excludable periods were ends-of-justice continuances under § 3161(h)(7)(A).

### 1. Delays resulting from other proceedings concerning the defendant.

The motion-to-dismiss continuance was properly excluded as a delay resulting from other proceedings concerning the defendant under § 3161(h)(1)(D). Section 3161(h)(1) excludes "[a]ny period of delay resulting from other proceedings concerning the defendant." Such proceedings include "any pretrial motion, from the filing of the motion

8

through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D).

On October 21, 2020, Pair's counsel filed a motion to dismiss the indictment for speedy trial violations. Various stages of motions practice followed, including briefing by both parties and motions by Pair for the issuance of subpoenas and preparation of transcripts. This culminated in an evidentiary hearing in December. The following January 27, the district court denied the motion to dismiss. Although Pair conceded before the district court that the motion to dismiss tolled his speedy trial clock, he now vaguely challenges the exclusion of "September 24, 2020 through January 2021." Appellant's Br. 23. Issues of waiver aside, we find it straightforward that this period is excluded under § 3161(h)(1)(D). Pair offers no reason why we should ignore the plain statutory command of this provision, and we decline to do so.

### 2.  Ends-of-Justice Continuances.

The four remaining periods were properly excluded as ends-of-justice continuances under § 3161(h)(7)(A). Section 3161(h)(7)(A) excludes continuances granted by the district court when it determines that "the ends of justice served by [granting the continuance] outweigh the best interest of the public and the defendant in a speedy trial." The provision requires the court to "set[] forth, in the record of the case, either orally or in writing, its reasons" for granting the continuance. 18 U.S.C § 3161(h)(7)(A).

The statute lists several factors that judges must consider in determining whether to grant an ends-of-justice continuance, including "[w]hether the failure to grant such a continuance . . . would be likely to make a continuation of such proceeding impossible, or

9

result in a miscarriage of justice." *Id.* § 3161(h)(7)(B). Other factors include "whether the case is complex or unusual, whether counsel need additional time to prepare effectively, and whether delay is necessary to ensure continuity of counsel." *United States v. Henry*, 538 F.3d 300, 303–04 (4th Cir. 2008).

***The General Order continuances***. The first set of General Orders issued by Chief Judge Davis had the cumulative effect of continuing all criminal jury trials in the district from March 16 through September 13, 2020. Each General Order contained detailed findings about the effect of the COVID-19 pandemic on the court's ability to conduct fair and safe jury trials and balanced the interests of criminal defendants and the public against the ends of justice served by granting the continuances. *See* General Orders 2020-02; 2020-06; 2020-07; 2020-12; 2020-16; and 2020-19.

While the Speedy Trial Act is clear that the district court must "se[t] forth, in the record of the case, either orally or in writing, its reasons" for finding that the ends of justice outweigh the need for a speedy trial, "the Act is ambiguous on precisely when those findings must be" put on the record. *Zedner*, 547 U.S. at 506–07. While "[t]he best practice . . . is for a district court to put its findings on the record at or near the time when it grants the continuance," the district court need only do so by the time it rules on a defendant's motion to dismiss under the Speedy Trial Act. *Id.* at 507 n.7. This after-the-fact recording suffices so long as "it is clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance." *United States v. Keith*, 42 F.3d 234, 237 (4th Cir. 1994), *abrogated on other grounds by United States v. Velasquez*, 52 F.4th 133, 140 (4th Cir. 2022).

10

The district court met this standard. In its order denying Pair's motion to dismiss for Speedy Trial Act violations, the district court "explicitly incorporate[d] by reference the reasons given in [each General Order] for finding that the ends of justice served by the continuances . . . outweigh the best interest of the public and the defendant in a speedy trial under § 3161(h)(7)(A)." And it did so "[t]o ensure that the General Orders' finding[s] [were] clearly set forth in the record of this case." *Pair*, 515 F. Supp. 3d at 407. The district court emphasized that delaying jury trials "struck the appropriate balance" between the safety of trial participants and the public with the constitutional and statutory responsibility to proceed with criminal proceedings. *Id.* at 408 (citing General Order 2020-19 at 22–23). The delay also permitted the district court to balance the right to a *speedy* trial with the right to a *fair* trial. The district court emphasized that, without a delay, jurors would be distracted and difficult to secure, and defense counsel would be impeded in preparing a defense. *Id.*

It is also clear that the district court contemporaneously balanced these factors. That is, the justifications given by the district court in its order denying Pair's motion to dismiss were not some post hoc rationale. It is abundantly apparent from the record that the district court was aware of the dangers posed by holding trial in the middle of a deadly pandemic and weighed these dangers against the interest in a speedy trial each time it issued a continuance.

The result of this balancing was not in error. "Surely a global pandemic that has claimed more than half a million lives in this country . . . falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public

11

health." *United States v. Olsen*, 21 F.4th 1036, 1047 (9th Cir. 2022), cert. denied, 142 S. Ct. 2716 (2022); *see also United States v. Jones*, No. 21-3252, 2023 WL 1861317, at *7 (6th Cir. Feb. 9, 2023) (holding that the district court did not err in excluding COVID-19-related delays from defendant's speedy trial clock under § 3161(h)(7)(A)); *United States v. Leveke*, 38 F.4th 662, 670 (8th Cir. 2022), cert. denied, 143 S. Ct. 386 (2022) (same); *United States v. Keith*, 61 F.4th 839, 851 (10th Cir. 2023) (same).

It would be the worst kind of hindsight to say that this judgment was in error. To hold a trial amid the pandemic would have required that jurors, witnesses, counsel, and courthouse personnel act contrary to the advice of public health professionals and put themselves in harm's way. In late 2020, the Centers for Disease Control was still urging individuals to mask, avoid crowds, and social distance. *See* Margaret A. Honein, PhD et al., *Summary of Guidance for Public Health Strategies to Address High Levels of Community Transmission of SARS-CoV-2 and Related Deaths*, 69 Morbidity and Mortality Wkly. Rep. 1860 (2020). In some cases, trial participants might also find themselves acting contrary to the cautions of their own physicians. The trial might have soon fallen into disarray. Jurors and witnesses could have been exposed to the virus and would need to be excused. The basic requirement of capturing a cross-section of the community for the jury would have been undermined, given that the pandemic hit some sections of the population harder than others. Mistrust would fester if jurors sensed one of their peers was coming down with an illness. Imagine, too, how a district judge would feel if someone were hospitalized (or worse) due to COVID-19 because of insufficient protection in the

12

courtroom. These are but a handful of the difficulties that could have plagued an in-person trial.

A remote trial would have been no real answer either, given the question of whether remote trials are the equivalent of the real thing. Remote trials raise questions about the diminished capacity of the jury to make credibility findings, of defense counsel to achieve meaningful cross-examination, and of attorneys to effectively connect with jurors. In short, the district court was well within reason to find that delaying trials during the pandemic served the ends of justice and outweighed the interest in speedy trials.

Pair doesn't meaningfully dispute these facts. Instead, Pair argues that the district court could not rely on the General Orders' blanket findings but had to set forth specific reasons as to why delaying *Pair's* trial served the ends of justice and outweighed *his* interest in a speedy trial.

We disagree. It is true that neither the United States Supreme Court nor the Fourth Circuit has squarely addressed the issue of whether courts can make district-wide findings to continue criminal jury trials en masse and exclude the relevant time from each defendant's speedy trial clock. But just because the General Orders speak in broad terms does not mean they are not directly relevant to Pair's case. The dangers highlighted in the General Orders apply with equal force to Pair's trial as they would to any defendant in the district. The very purpose of the General Orders and their broad reach was to set forth the reasons why holding *any* jury trial during that stage of the deadly pandemic would have been inadvisable. We decline to require district courts to make duplicative findings as to

13

each defendant, when each trial would pose the same unacceptable risks to trial participants.

The Ninth Circuit agrees with us on this point. *United States v. Orozco-Barron*, 72 F.4th 945, 958 (9th Cir. 2023) (holding that individualized findings are unnecessary "where the period of delay was caused by an emergency or disaster that has the same widespread effects on courts and parties alike"). Such an approach reflects the purpose of the ends-of-justice exclusion. The exclusion is, by its very nature, designed to give some, though not limitless, discretion to those saddled with the often-demanding task of weighing expedition against procedural fairness. *Keith*, 61 F.4th at 845; *see also Zedner*, 547 U.S. at 498. Requiring formalistic, duplicative efforts by district courts during an unforeseeable and widespread crisis would undermine the very flexibility the section provides.

In sum, the district court timely set forth its reasons for excluding March 16 through September 13 from Pair's speedy trial clock. Those reasons complied with the requirements of § 3161(h)(7)(A). Thus, this period was properly excluded from the speedy trial calculation.

***The district court's July continuance***. On July 2, 2020, the district court set trial for September 30 and found that, under § 3161(h)(7)(A) and General Order 2020-19, "the ends of justice served by granting a continuance outweigh[ed] the best interest of the public and the defendant in a speedy trial." J.A. 77. For the same reasons discussed above, the district properly relied on a General Order to continue trial. Thus, this period was properly excluded from Pair's speedy trial calculation.

14

*The district court's September continuance*. In September 2020 the district court again continued Pair's trial from September 30 to December 8 to give newly appointed counsel time to prepare for trial. This continuance resulted from Pair's former counsel filing a motion to continue on September 18 because she needed to undergo urgent surgery. The court granted that motion and then appointed new counsel. The continuance order noted that "it [was] appropriate to grant the newly appointed defense counsel's request for adequate time for trial preparation" and therefore "the interests of justice served by granting the continuance outweigh[ed] the interest of the defendant and the public [in] a speedy trial" pursuant to § 3161(h)(7)(A). J.A. 130.

Pair argues that this time was improperly excluded because the motion to continue was for the benefit of his former counsel, rather than for his own benefit. Pair emphasizes that his former counsel went to great lengths to style the motion as her own, and that he specifically objected to the continuance. Therefore, he contends that the district court erred in excluding this period from his speedy trial calculation.

The plain text of the Speedy Trial Act forecloses that contention. The Act expressly permits a district court to grant an ends-of-justice continuance requested by defense *counsel*, as distinct from one requested by a defendant. 18 U.S.C. § 3161(h)(7)(A) (excluding any period of delay resulting from an ends-of-justice continuance granted "at the request of the defendant *or his counsel*") (emphasis added). Consent of the defendant is not listed among the several factors that a court should consider in granting an ends-of-justice continuance. § 3161(h)(7)(B). However, whether the failure to grant a continuance "would deny counsel for the defendant . . . the reasonable time necessary for effective

15

preparation" is a factor the court "shall consider" in making an ends-of-justice determination. § 3161(h)(7)(B)(iv).

Other courts of appeals have reached this same conclusion. *See United States v. Gates*, 709 F.3d 58, 66 (1st Cir. 2013) ("[I]n the ordinary course and within the confines of the [Speedy Trial Act] exclusion provisions, defense counsel has the power to seek [a] continuance without first informing his client or obtaining his client's personal consent."); *United States v. Lynch*, 726 F.3d 346, 356 (2d Cir. 2013) ("[A] district court may grant a continuance sought by counsel without the consent of the defendant so long as the district court determines that the ends of justice would be served . . . and sets forth its findings on the record."); *United States v. Herbst*, 666 F.3d 504, 510 (9th Cir. 2012) ("[The defendant's] opposition to his counsel's request for a continuance does not prevent that time from being excluded from the speedy trial calculation."); *see also United States v. Bryant*, No. 96-4359, 1998 WL 39393, at *3, 9–10 (4th Cir. Feb. 2, 1998) (per curiam). Medical emergencies on the part of the defendant or his counsel are among those things often justifying a continuance. How a district court handles that circumstance is not a matter that calls for casual reversal.

For these reasons, this period was properly excluded from Pair's speedy trial calculation.

***The district court's January continuance***. On January 12, the district court continued Pair's trial to March 8 pursuant to § 3161(h)(7)(A). The order incorporated the speedy trial findings in General Order 2021-01 and determined that the record in Pair's case reflected those findings, as counsel for the government was forced to quarantine after

16

a potential exposure to the virus. Pair has not challenged the continuance of his trial from January 19 to March 8 in this appeal or in the district court. For the reasons earlier discussed about the propriety of relying on General Orders to grant an ends-of-justice exclusion, the district court properly excluded January 19 through March 7.

*

Below we set forth the excludable periods of delay as reflected in the record. The dates in the table do not always match precisely the dates set forth in the narrative above because the table has eliminated overlapping days in order to avoid overcounting excludable time. *See also* Appellee's Br. 31–32.

| Time Period | Reason | Statutory Provision | Number of Days |
|---|---|---|---|
| February 5, 2020 | Defendant's arraignment | 18 U.S.C. § 3161(h)(1) | 1 |
| March 16 through September 13, 2020 | General Orders 2020-02, 2020-07, 2020-12, 2020-16, and 2020-19 continuing all trials based on COVID-19 | 18 U.S.C. § 3161(h)(7)(A) | 182 |
| September 14 through September 22, 2020 | July 2 order continuing trial to September based on COVID-19 | 18 U.S.C. § 3161(h)(7)(A) | 9 |
| September 24 through October 20, 2020 | September 24 order continuing trial to December to allow newly-appointed counsel time to prepare | 18 U.S.C. § 3161(h)(7)(A) | 27 |
| October 21, 2020, through January 11, 2021 | Filing of, hearing on, and disposition of defendant's motion to dismiss the indictment for speedy trial violations | 18 U.S.C. § 3161(h)(1)(D) | 83 |

17

| January 12 through March 7, 2021 | January 12 order continuing trial to March 8 based on COVID-19 | 18 U.S.C. § 3161(h)(7)(A) | 55 |
|---|---|---|---|
| **Total** | | | **357** |

In total, 357 days of 401 days were properly excluded. This means that, at most, only 44 days accrued towards Pair's speedy trial clock. Pair's rights under the Speedy Trial Act were not violated.

## III.

Pair also argues the district court should have dismissed the indictment because the delay violated his constitutional as well as his statutory right to a speedy trial. We review a district court's factual findings on a motion to dismiss an indictment for clear error and its legal conclusions de novo. *United States v. Woolfolk*, 399 F.3d 590, 594 (4th Cir. 2005).

## A.

The Sixth Amendment guarantees the "right to a speedy and public trial" for all criminal defendants. U.S. Const. amend. VI. The bounds of this right are "impossible to determine with precision." *Barker v. Wingo*, 407 U.S. 514, 521 (1972). "We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate." *Id.* Thus, "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case." *Id.* at 522.

18

The Supreme Court in *Barker* specified four factors courts must balance when determining whether a defendant's constitutional right to a speedy trial has been violated: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530. To prevail on a speedy trial claim, a defendant must "establish that on balance, [the] four separate factors weigh in his favor." *United States v. Hall*, 551 F.3d 257, 271 (4th Cir. 2009) (alteration in original) (internal quotation marks omitted).

The constitutional and statutory rights to a speedy trial should ideally operate in tandem. The *Barker* factors usefully illuminate the contours of the Sixth Amendment speedy trial right, but they are also indeterminate. In the Speedy Trial Act, Congress gave more concrete expression to the general Sixth Amendment concerns, and it is thus not surprising that courts have consistently recognized that "[i]t will be the unusual case . . . where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002).

**B.**

The government concedes that the 401-day period between Pair's first appearance and trial is a "presumptively prejudicial" delay. Appellee's Br. 47–48 (citing *United States v. Burgess*, 684 F.3d 445, 452 (4th Cir. 2012)). Therefore, the first *Barker* factor favors Pair. The other *Barker* factors, however, favor the government.

The second factor—the reason for the delay—favors the government for the reasons discussed in the prior section. "[D]ifferent weights should be assigned to different reasons"

19

for delay. *Barker*, 407 U.S. at 531. And "a valid reason . . . should serve to justify appropriate delay." *Id.*; *see also Hall*, 551 F.3d at 272 ("The reasons for a trial delay should be characterized as either valid, improper, or neutral."). Here, much of the interruption "was attributable to the unpredictable and unavoidable public health crisis presented by the COVID-19 pandemic." *United States v. Vladimirov*, No. 22-4049, 2023 WL 2535263, at *5 (4th Cir. Mar. 16, 2023). We are in good company to find that this is a valid reason for delay. *See United States v. Walker*, 68 F.4th 1227, 1238 (9th Cir. 2023) ("The pandemic, not the prosecution, caused the delay."); *United States v. Marquez*, No. 21-30134, 2022 WL 16849065, at *1 (9th Cir. Nov. 10, 2022) ("Most of the delay was attributable to valid reasons, including the onset of the global COVID-19 pandemic."); *United States v. Snyder*, 71 F.4th 555, 578 (7th Cir. 2023) ("[T]he pandemic-related delays in Snyder's case were justifiable and cannot fairly be attributed to the government.").

At the outset of the pandemic, measures we now know to be useful in combating the spread of the virus (such as masking, separation, remote proceedings, and vaccinations) were either nascent or, as in the case of vaccines, unavailable. Advice from health professionals was sometimes conflicting. Remote alternatives were not as developed as they are today. The government simply cannot be faulted for a highly contagious and mutating virus. On the contrary, in continuing jury trials, the government and the courts were protecting the public in the best way they knew how at that point in time.

Further, roughly two months of delay are attributable to defense counsel's urgent medical need and the necessity of allowing new counsel to prepare for trial. These are also valid reasons for delay. *See, e.g.*, *United States v. Hopkins*, 310 F.3d 145, 150 (4th Cir.

20

2002) (defendant's need for medical treatment valid reason for delay); *United States v. Souza*, 749 F.3d 74, 82 (1st Cir. 2014) (medical leave of party needed to produce key documents valid reason for delay); *Keith*, 61 F.4th at 853 (new counsel needing more time to prepare for trial valid reason for delay). And a significant portion of the delay was attributable to Pair himself, as his motion to dismiss tolled his speedy trial clock for roughly three months.

The third *Barker* factor is "the timeliness and vigor of the assertion of the speedy trial guarantee." *Hall*, 551 F.3d at 271. While "[f]ailure to assert the right to a speedy trial, and even the explicit waiver of that right, is not dispositive of a Sixth Amendment speedy-trial claim," if a defendant fails to assert the right it will be difficult for him to "prove that he was denied a speedy trial." *United States v. Thomas*, 55 F.3d 144, 150 (4th Cir. 1995) (quoting *Barker*, 407 U.S. at 532). Pair's assertion of his speedy trial right was delayed. Pair did not object to the continuance of his trial until a September 21 conference call on defense counsel's motion to continue. *See* J.A. 110 (Pair's attorney noting that "[h]e still does not waive speedy trial" and "does not want this continued"). At that point, nearly eight months had passed since Pair's indictment, and Pair had remained silent in the face of various continuances.[1]

---

[1] Though Pair contends that he attempted to assert the right in a series of pro se letters, none of those letters can fairly be read as asserting his speedy trial rights. Rather, those letters vaguely asserted that he was "not getting represented the right way," that his "rights have been violated," that the magistrate judge "falsified evidence," that his counsel didn't "file motions [on his] behalf," and that his "indictment is defective." J.A. 35, 78, 82.

21

The final factor, prejudice, "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. These interests include "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* The final interest is the most salient "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Pair has "failed to show the delay may have adversely impacted the defense." *Hall*, 551 F.3d at 272. Pair "has not identified any witness that was unavailable" or "unable accurately to recall the events in question," does not "contend that any exculpatory evidence was lost," and has not "identified any evidence that was unavailable because of the delay." *United States v. Grimmond*, 137 F.3d 823, 830 (4th Cir. 1998). Pair's inability to show any prejudice to his defense from the delay is quite harmful to his claim.

Pair instead focuses on a combination of the first two interests, pointing to the *Barker* Court's recognition that "[t]he time spent in jail awaiting trial has a detrimental impact on the individual," as "[i]t often means loss of a job; it disrupts family life; and it enforces idleness." 407 U.S. at 532. Pair emphasizes that he was held pretrial at a location where more than seventy percent of inmates tested positive for COVID-19. He argues that his employment and relationships were "affected" by his thirteen-month pretrial incarceration. Appellant's Br. 17.

We recognize that prisons could be dangerous places during the pandemic. *See* Massimiliano Esposito et al., *The Risk of COVID-19 Infection in Prisons and Prevention Strategies*, 10 Healthcare 270 (2022). We also recognize that virus mitigation efforts put

22

in place at Pair's facility likely made visitation with his family, friends, and attorneys more difficult. We do not discount these concerns. Were such general prison conditions to establish a Sixth Amendment violation, however, entire facilities could be substantially depopulated, a result that *Barker* in no way countenanced.

It remains critical, as we have noted, that Pair has not "shown, or even argued, that any evidence was damaged or lost, that any witnesses could not be found, or that his case was harmed in any manner by the delay." *Hopkins*, 310 F.3d at 150. The *Barker* Court was clear that this interest is the most serious of the three. *Barker,* 507 U.S. at 532. Indeed, in *Barker* itself, the Court stated that there was an "absence of serious prejudice" although the defendant was incarcerated for ten months before trial and was forced to "liv[e] for over four years under a cloud of suspicion and anxiety" because "there [was] no claim that any of Barker's witnesses died or otherwise became unavailable owing to the delay." *Id.* at 534. A similar absence of prejudice undermines Pair's own Sixth Amendment claim.

## IV.

Finally, Pair challenges the district court's denial of his motion for acquittal for insufficient evidence. We may easily dispense with this claim.

Substantial evidence supports Pair's convictions. Much of the evidence at trial came from the testimony of the confidential informant who purchased the drugs from Pair. This informant testified that he knew Pair because they had a mutual friend whose apartment they both frequented. He also testified that he and Pair had discussed doing business together prior to the informant cooperating with law enforcement. At trial, the government played recordings of the informant's calls to Pair to set up the controlled buys, and the

23

informant confirmed that the man he was speaking to was Pair. The government also played videos of both controlled buys, and the informant confirmed that, in both videos, Pair was the man who was selling the drugs to him. The informant additionally made an in-court identification of Pair.

A detective who testified that he had known Pair since 2002 also confirmed that the men in the phone calls and videos were the informant and Pair. He identified Pair by his tattoos in two still photographs taken from the videos and made an in-court identification of Pair.

Viewing the evidence in the light most favorable to the government as the prevailing party below, we conclude that any reasonable finder of fact could find beyond a reasonable doubt that Pair was guilty of distributing fentanyl.

## V.

For the foregoing reasons, we affirm the judgment.

*AFFIRMED*

24