In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 24-1765

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EFRAIN LEONIDES-SEGURIA,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cr-00390-1 — **John F. Kness,** *Judge*

_____

ARGUED DECEMBER 12, 2024 — DECIDED APRIL 18, 2025

_____

Before RIPPLE, SCUDDER, and MALDONADO, *Circuit Judges.*

SCUDDER, *Circuit Judge*. Efrain Leonides-Seguria urges us to overturn his conviction for illegal reentry into the United States, contending the government violated the Speedy Trial Act by filing the criminal information more than 30 days after his apprehension on immigration charges. By its terms, the Act does not apply to civil custody, which includes Leonides-Seguria's time in immigration detention. But several courts have carved out an exception when federal law enforcement

authorities collude with immigration officials to hold an individual on immigration charges as a mere ruse for later prosecution—buying prosecutors time to build a criminal case without implicating the Act's deadlines, while their target nevertheless remains in custody. Leonides-Seguria asks us to recognize this so-called "ruse exception." This is not the case to resolve the question, though, as Leonides-Seguria's appeal falls short of presenting circumstances that would give rise to its application. So we save the legal question for another day and affirm.

## I

Efrain Leonides-Seguria is a citizen of Mexico without any claim to American citizenship or lawful residence here. On several occasions he has entered the United States illegally and, in turn, been removed by immigration authorities.

On June 15, 2021, Immigration and Customs Enforcement again discovered Leonides-Seguria in the United States and detained him on administrative charges. Six days after taking Leonides-Seguria into custody, immigration officials referred him for criminal prosecution to the United States Attorney's Office in Chicago. On June 23—within two days of receiving the referral—federal prosecutors filed a criminal complaint against Leonides-Seguria for illegal reentry into the United States. See 8 U.S.C. § 1326. A magistrate judge issued an arrest warrant that same day.

Leonides-Seguria remained in immigration custody until June 28, when federal officials arrested him on the criminal complaint and brought him to federal court for his initial appearance. Leonides-Seguria later waived prosecution by

indictment and consented to the filing of a criminal information on July 27.

The district court denied Leonides-Seguria's motions to dismiss the federal charge on the grounds that the government violated the Speedy Trial Act and, separately, that § 1326 is unconstitutional. Leonides-Seguria then chose to plead guilty, reserving the right to appeal the denials of his motions to dismiss on both grounds. The district court sentenced him to 51 months' imprisonment.

Leonides-Seguria now appeals.

## II

### A

The Sixth Amendment promises anyone accused of a crime "the right to a speedy and public trial." This right limits the time during which criminal charges can hang over a defendant's head. See *United States v. Marion*, 404 U.S. 307, 317–18 (1971). For constitutional purposes, the "right to a speedy trial is triggered by an arrest, indictment, or some other official accusation." *United States v. Arceo*, 535 F.3d 679, 684 (7th Cir. 2008). And a pretrial delay of "approximately nine months," we have emphasized, warrants a "searching analysis" under the factors the Supreme Court described in *Barker v. Wingo*, 407 U.S. 514 (1972). See *United States v. White*, 443 F.3d 582, 589–90 (7th Cir. 2006).

In 1974 Congress enacted the Speedy Trial Act to "implement the Sixth Amendment's right to a speedy trial." *United States v. Janik*, 723 F.2d 537, 542 (7th Cir. 1983). The Act establishes and enumerates specific time limits during which the various stages of a federal criminal prosecution must be completed.

As relevant here, the Act provides that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Congress defined "offense" to mean "any Federal *criminal* offense." *Id.* § 3172(2) (emphasis added).

We have explained that the Act's 30-day limit does not "begin to run because of just any arrest based on the conduct that ultimately supports the federal prosecution." *United States v. Clark*, 754 F.3d 401, 405 (7th Cir. 2014). Rather, an "arrest must be for the purpose of bringing federal [criminal] charges," as the right protected by the Act "applies only to persons who are formally accused of a crime." *Id.* Upon arresting someone on criminal charges, the government has 30 days to file an information or indictment formally bringing the charges of the arrest. See 18 U.S.C. § 3161(b). Failure to comply with the deadline requires dismissal of the underlying criminal charges. See *id.* § 3162(a)(1).

B

We begin with two points of agreement between the parties. *First*, the government filed the criminal information charging Leonides-Seguria with illegal reentry on July 27, 2021. This occurred 29 days after his June 28 arrest on the same criminal charges and thus within the 30-day Speedy Trial Act period. Against this backdrop, Leonides-Seguria's claim that the government violated the Act hinges upon his contention that the statutory clock began to run *before* his formal arrest on criminal charges—during his civil immigration detention by ICE.

*Second*, the parties agree that, as a general matter, the Speedy Trial Act does not apply to civil detention and, by extension here, to ICE administrative detention. Section 3161(b), by its terms, exclusively governs federal criminal prosecutions, and only an arrest on criminal charges triggers its time limit. Immigration removal, however, is a "purely civil action to determine eligibility to remain in this country, not to punish an unlawful entry." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). Although we have not had occasion to address the issue, every circuit court to do so has agreed that detention on federal immigration charges typically does not start the Act's 30-day clock. See *United States v. Rodriguez-Amaya*, 521 F.3d 437, 441 (4th Cir. 2008) (collecting cases); *United States v. Pasillas-Castanon*, 525 F.3d 994, 997 (10th Cir. 2008) (same).

Leonides-Seguria invites us to adopt and apply an exception to the usual rule that ICE detention does not trigger a running of time under the Speedy Trial Act. The "ruse exception," he tells us, applies when an individual is initially detained on immigration charges but prosecutors later file criminal charges—such as illegal reentry pursuant to § 1326. The exception operates to prevent criminal authorities from using the expedient of civil immigration detention to ensure a target for prosecution stays in custody while the Act's 30-day deadline nevertheless remains at bay.

The Ninth Circuit has adopted this ruse exception. "The requirements of the Act," the court reasoned, "would lose all meaning if federal criminal authorities could collude with civil … officials to have those authorities detain a defendant pending federal criminal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act." *United States v. Cepeda-Luna*, 989 F.2d 353, 357 (9th Cir. 1993).

Accordingly, the court continued, "the Speedy Trial Act can be applied to civil detentions which are mere ruses to detain a defendant for later criminal prosecution." *Id.* But on the facts before it, the court determined that the exception did not apply and declined to grant relief under the Act. See *id.* at 357–58.

Several other circuits have taken a similar approach—recognizing the ruse exception in theory but finding it inapplicable on the particular facts before them. See, *e.g.*, *United States v. Garcia-Martinez*, 254 F.3d 16, 20–21 (1st Cir. 2001); *United States v. Guevara-Umana*, 538 F.3d 139, 142 (2d Cir. 2008); *Rodriguez-Amaya*, 521 F.3d at 442; *United States v. De La Pena-Juarez*, 214 F.3d 594, 598 (5th Cir. 2000); *Pasillas-Castanon*, 525 F.3d at 997–99; *United States v. Noel*, 231 F.3d 833, 836–37 (11th Cir. 2000). As the law stands today, then, no court of appeals has afforded a criminal defendant relief under the Speedy Trial Act based on a ruse exception.

It is far from clear that the plain language of the Speedy Trial Act permits anything other than a formal arrest on criminal charges to start the Act's 30-day clock. See 18 U.S.C. § 3172(2) (defining "offense" within the meaning of the Speedy Trial Act as a "Federal *criminal* offense" (emphasis added)); see also *United States v. Hopkins*, 106 F.4th 280, 289–93 (3d Cir. 2024) (concluding that "a ruse exception is inconsistent with the text of the [Act] and that there are sound policy rationales for declining to adopt a ruse exception").

Even if the Act could be read to permit a ruse exception, the necessary second step would be to define its scope and content. Some courts, for example, have put the burden of proof on defendants to show the "primary or exclusive purpose" of their civil detention was to hold them for future

criminal prosecution. See, *e.g.*, *Rodriguez-Amaya*, 521 F.3d at 442. Others have required evidence of "bad faith" collusion on the part of the government officials. See, *e.g.*, *Pasillas-Castanon*, 525 F.3d at 998 n.1. And still others have said that a defendant is not entitled to invoke the exception if the detaining authorities had a "lawful basis" for the civil detention. See, *e.g.*, *United States v. Kelley*, 40 F.4th 276, 283–84 (5th Cir. 2022).

But we need not—and do not—resolve today what circumstances, if any, would suffice to constitute a "ruse." Assuming for purposes of this appeal that, in some extraordinary set of circumstances, § 3161(b) of the Speedy Trial Act applies to persons civilly detained and awaiting removal, no formulation of the exception would provide Leonides-Seguria relief on the facts before us.

C

Before ruling on Leonides-Seguria's motion to dismiss, the district court conducted an evidentiary hearing to evaluate the applicability of the ruse exception. Three ICE officials testified, explaining the typical procedures the agency uses in connection with immigration detainees, removal logistics, and referrals for prosecution. And they further described Leonides-Seguria's apprehension and processing through ICE custody in June 2021. The district court credited their testimony and found no evidence of collusion between immigration authorities and federal prosecutors to circumvent the protections of the Speedy Trial Act.

We see no clear error in that finding. See *United States v. Trudeau*, 812 F.3d 578, 583 (7th Cir. 2016). To the contrary, the handling of Leonides-Seguria's case demonstrates ordinary

cooperation between federal officials in processing an individual subject to both removal and criminal prosecution as a result of unlawful entry into the United States.

Less than a week after federal immigration authorities detained Leonides-Seguria on administrative charges, an ICE official reviewed his case to assess whether he met the criteria to be presented for prosecution. The official determined that he did and, that same day, referred the case to the United States Attorney's Office and recommended Leonides-Seguria be charged with violating 8 U.S.C. § 1326. Two days later, on Wednesday, June 23, federal prosecutors filed a criminal complaint against Leonides-Seguria. Based on the complaint and supporting affidavit, a magistrate judge issued an arrest warrant later that same day. Finally, after sorting out some logistical details, ICE arrested Leonides-Seguria the following Monday, June 28.

Immigration officials undoubtedly had authority to detain Leonides-Seguria on administrative charges for returning to the United States without lawful status. And Leonides-Seguria has failed to point to evidence that ICE apprehended him at the request of criminal authorities—let alone did so primarily to hold him to buy more time or further a criminal investigation. Indeed, the record demonstrates that prosecutors were not even aware of Leonides-Seguria's case until ICE referred it to the U.S. Attorney's Office.

We see no basis for concluding that federal prosecutors colluded with ICE personnel to prolong Leonides-Seguria's detention or evade Speedy Trial Act deadlines. To the contrary, prosecutors moved quickly upon receiving ICE's referral to swear out a criminal complaint and arrest Leonides-Seguria. Everything happened within a single

week. This timeline reflects nothing more than the efficient processing of a non-citizen for both removal and criminal prosecution. On these facts, we have little trouble concluding that Leonides-Seguria's arrest and prosecution did not violate the Speedy Trial Act.

Leonides-Seguria urges us to read the ruse exception more broadly. Relief under the Speedy Trial Act is warranted, he contends, even in the absence of bad faith collusion among government officials where an individual remains in ICE custody after it becomes apparent that federal criminal authorities intend to prosecute him. On this view, the U.S. Attorney's Office's filing a criminal complaint confirmed that Leonides-Seguria's detention—though officially on civil immigration charges—was primarily for the purpose of a prosecution. And so, Leonides-Seguria continues, the speedy trial clock began no later than June 23, the day prosecutors filed the criminal complaint—not June 28, the day of his arrest. By his reading, then, the Act's 30-day deadline expired before prosecutors ultimately filed the criminal information on July 27.

But Leonides-Seguria takes too narrow a view of the "primary purpose" of his civil immigration custody—ignoring both the totality of circumstances surrounding his detention by ICE and the routine interaction and cooperation between government officials that preceded and accompanied the filing of criminal charges and arrest. Indeed, as the district court observed, Leonides-Seguria's position is "unmoored from the stated justification for the ruse exception: namely, preventing '[t]he requirements of the Speedy Trial Act [from] los[ing] all meaning' by allowing *collusion* between federal prosecutors and civil or state officials 'solely for the purpose of bypassing the requirements of the Speedy Trial Act.'" *United States v.*

*Leonides-Seguria*, 730 F. Supp. 3d 772, 782 (N.D. Ill. 2024) (alterations in original) (quoting *Cepeda-Luna*, 989 F.2d at 357).

Finally, principles of separation of powers require a federal court to proceed with caution before interfering with coordination between different arms of the Executive Branch. By no means are we saying that federal immigration officials can collude with prosecutors to hold a non-citizen indefinitely as they build evidence for a criminal case. And perhaps in an extreme and extraordinary situation, a de facto "arrest" within the meaning of § 3161(b) of the Speedy Trial Act could occur while an individual remains in civil immigration custody. But such circumstances are not before us today. To hold that facts and circumstances like the ones before us here reflect a bad faith "ruse" would upend the ordinary administration of immigration law. We decline that invitation.

In the final analysis, we agree with the district court's finding of no Speedy Trial Act violation and the denial of Leonides-Seguria's motion to dismiss.

## III

We owe a brief word in closing to Leonides-Seguria's independent contention that Congress's criminal prohibition on illegal reentry into the United States in 8 U.S.C. § 1326 violates the Fifth Amendment's guarantee of equal protection. As counsel candidly acknowledged at oral argument, our precedent forecloses this position. See *United States v. Viveros-Chavez*, 114 F.4th 618, 630 (7th Cir. 2024), *cert. denied*, No. 24-6002, 2025 WL 76643 (U.S. Jan. 13, 2025).

For these reasons, we AFFIRM.